Avert, J.
In section 65 of the act providing for levying taxes, is a provision that the auditor of state, with the advice of the attorney-general, shall decide all questions which arise as to the true construction of the act, subject to an appeal in all cases to the Supreme Court. The auditor, with the advice of the attorney-general, has decided adversely to the several claims of the appellants, and they have all appealed from the decision, and now ask the court to give a construction to the act and amendment, as *they affect the interests of the appellants. The error complained of in each of the cases is a misconstruction of section 26 of the amendatory act. That section is in these words:
' “It shall be the duty of such township assessors while engaged in ascertaining the taxable property, by diligent inquiry, annually to ascertain the amount of rents reserved in any leases in fee, for one or more lives, or for a term of years exceeding fourteen years, and the terms of which provide, by any contingency, for a continuance of renewal beyond such number of years, and chargeable upon any real property or land within the township, town, or ward, of which he is the assessor; which rents shall be assessed to the person or persons entitled to receive the same, as personal property, which it is hereby declared to be, for the purpose of taxation under this act and the act to which this is an amendment, at a principal sum, the interest of which, at the legal rate per annum, shall produce a sum equal to such annual rents; and in case such rents are pajmble in anything except money, the value of annual rents in money, shall be ascertained by the assessors, and the same shall be assessed as aforesaid, and taxes shall be charged, assessed, and collected from any personal property placed upon the grand duplicate in pursuance to the provisions of this section, the same as taxes are charged, assessed, and collected on other personal property in the particular township or ward wherein the same may have been placed upon the graud duplicate.”
The assessor, while engaged in ascertaining the taxable property, is directed to inquire for leases for a term of years exceeding fourteen, and renewable ; such leasos having rents reserved, chargeable upon any real property or land. He is to assess these rents as personal property, and to adopt one uniform rule for determining their value, as he places them upon the tax list; that of-fixing upon a sum whoso annual interest is just equal to the annual rent. In *each of the cases now before the court, there *497 is a lease for a period longer than fourteen years, and renewable, with a rent reserved, chargeable upon land in Cincinnati, and in each case the amount of assessment is just as it is required to be by the statute. There seems, therefore, to be no room left for doubt, that the assessor followed in each case the words and the clear meaning of the statute.
But simply to put an interpretation upon this law, and, to ascertain its moaning, was not the object of these appellants in bringing their cases before the court. It was to present a graver inquiry, and to call in question the binding force of this law, however plain may be its meaning; and the right to make such an inquiry is conceded to these parties, for we would not be employed in examining mere phraseology, and putting an interpretation upon the words of a law, when its directions could not be enforced, because not in accordance with the constitution.
This law is claimed to be unconstitutional for various reasons:
Because it taxes one kind of property twice in the same year, when it taxes other kinds but once.
Because it taxes one kind of property in the hands of A., and does not tax the same in the hands of B.
Because it impairs the obligation of contracts.
Because it fixes the valuation of a certain kind of property, and does not leave it to be ascertained in the manner provided for all other property.
Because it taxes property where it does not exist, and makes property to get a tax, where there is none.
Among the causes here assigned, there is perhaps but one, that in terms is taken notice of in our constitution ; still, acts may bo void if not so noticed, though in all such cases, as one guide to the judgment is wanting, peculiar caution would seem to be demanded.
For the power, however, conferred upon the legislature, and for ascertaining its limits, we must look into the constitution *and bo governed either by its language or spirit. Now, upon this very subject of taxation, if I am not mistaken, we shall look in vain for any direct grant of such power in the instrument; and we shall be met with a provision there in these words: “To guard against the transgression of the high powers, which we have delegated, we declare that all powers, not hereby delegated, remain with the people.” In certain parts of the constitution, indeed, the subject is alluded to, and words are used,from which.the *498 power may be inferred. But suppose there were no mention of a tax, or any distinct reference to it in the constitution, would there be any doubt of the existence of such a power in the legislature? Would it not be declared to be inherent in that body, because without it the constitution would be useless, and the government entirely without power? This right of taxation, then, which must be admitted to exist in the sovereign power, or the power sovereign under the constitution, whether given by express terms or not, will be regarded for all the purposes of the present inquiry as being in our constitution. But it is there, without, in terms, any limitation upon its exercise, either as to the amount to be assessed, or equality in the imposition of the tax. This consideration may lead us to use with caution the argument, that an exercise of the taxing power must be unconstitutional, because it would come to such a result, by being carried to extremes, and this remark may be applied particularly to what is said about fixing the valuation of the reserved rents, that if the legislature be sustained in calling them now worth $10,000, they may hereafter, and without any reason, call them worth $100,000. But this need not be apprehended, for they have been in the constant practice, ever since the foundation of the state government, of levying taxes, and though with reference to the subject here considered, without any restraint in the constitution, they have not proceeded to any such extreme length.
But what would be correct restraint upon the taxing power, ^according to the spirit of our constitution, and the nature of our free government? Who has ever been able to devise a plan of perfect taxation, making its burden always just or equal? To tax a man exactly according to his property, or according to his income; to tax every description of property, or to tax every description of property alike, has never been practiced. Is it either wrong or even impolitic to tax luxuries more heavily than articles of necessity; to exempt a few articles belonging to poor persons altogether, and to discriminate for vai’ious reasons among the several objects of taxation ? The intrinsic difficulties to bo found in the whole subject necessarily call for the exercise of prudence in any attempt to interfere with a tax law, lest the legislature should be embarrassed in its just efforts to pay the debts of the state. That a tax is unequal and burdensome, are proper .reasons for applying to the legislature for relief, but can seldom, *499 if ever, justify the action of a court. All taxes are, to an extent, burdensome; there has been no time in the history of our state government when they were not unequal; and there is but little hazard in saying that this evil can not be entirely removed in the future.
In the argument of the cases now before the court, all the reasons that can be made applicable, have been urged to prove the law to be unconstitutional; and 1 have noted before, the chief points and principles relied upon.
It is said, as one of these points, that the law taxes property where it does not exist, makes property to get a tax where there is none.
The assessor, in his annual visit to ascertain the taxable property within his district, is shown a lease upon a certain lot of ground, in which the rent is reserved is $600. The lessor is to receive this sum in the course of the year, he is satisfied that ho will receive it, and he gives in the amount to the assessor that it may be put upon his list. This is right, the counsel for the lessor admit; this sum is his, or will be his in the course of the year, and it is proper that he should *pay taxes for it, and, as they contend, for this only. But the assessor takes a different view of the matter; he looks into the law, which is his guide in the case, and finds there that instead of $600, he is obliged to put down $10,000 upon his list. Hero, the counsel say, is property created, put upon the list, to furnish the basis for a tax, when it had no previous existence. It is called ideal property. Is such a view just? There is certainly here, one of the common-law incorporeal hereditaments, that has had a meaning and a sanction, and a value time out of mind ; and they are all ideal, if this is so. But by looking into the lease, if drawn in the usual form, and the first upon the property, the assessor will probably find, without using his arithmetic, the exact sum which the law directs him to put upon his list. It is the common case of the owner in fee, making a permanent lease, for ninety-nine years, renewable forever, reserving to himself the payment of an annual rent, stipulating for the entire use by the lessee, and his enjoyment of the property to himself and his assigns forever, and stipulating, amongst other things also (in the case supposed), that upon the payment of $10,000 a deed in fee simple will be executed.
Now in this case, by the terms of the instrument, the lessor has *500 a.claim to $600 in the coarse of the year; but is all his interest in the lease beyond, this sum merely ideal, a fiction, a pure creation by the legislature? Before ho executed this lease, his interest in the property was worth $10,000 ; directly after its execution and when ho has received no consideration, does he believe that his estate has been so impaired ? If he had not supposed a sure provision for the aqnual income worth as much to him as the land, ho would not have accepted it in the place of the land, and if he were to offer that interest in the market, he would probably realize from it the price or about the price of his land. If he provided in the terms of the lease, as has been done in the cases under consideration, that the leasee should pay all the taxes, then the land is, in effect, not taxed to him. When he is to be ^assessed to bear his just portion of the necessary burden of taxation according to his wealth and apparent ability to pay, that which he has accepted in exchange for his land constitutes the item to be taxed. It is denominated in this law personal property, and treated as such both for assessment and collection. What name has been given to it is not important, the thing that is meant can be readily apprehended. We can not perceive in this law any principle of injustice in its action upon the lessor. All property is held to be liable to be taxed in some shape, unless exempted under the faith of the state, and in this case, ior all practical purposes, the lessee has become the owner of the land; ho takes possession and controls, and, if he chooses, sells it. When the lessor offered to part with this land, it was upon terms that would convoy all the valuable interest. Of course it would be liable to be taxed in future; but in this it did not differ from all other property.
This law, it is objected, taxes one kind of property twice in the same year. It taxes the property and taxes also its value. One of these taxes, however, is against the person who should be regarded the actual owner of the hind, and the other the owner of the consideration which he has received for it, and then the lessee has no more cause of complaint than the owner in fee, who has mortgaged it for the purchase money, or the owner of any other property who is in debt for it. But a system of taxation embracing this objectionable feature in regard to land, has been in existence ever since the legislature provided for levying taxes, and, in regard to personal property the same feature has existed also for *501 a considerable time past. This length of time, it is true, does not prove that such a mode of distributing burdens is just; but the practice so long acquiesced in, is evidence that the evil in reality, and looking upon the whole subject, is not so great as it appears, or there is almost insuperable difficulty in obviating it. What, however, is this property of the lessee ? It may have risen immonselyin value since the *dato of his permanent lease. He may have erected costly buildings upon it, and made other valuable improvements, and it may therefore be proper to put it upon the tax list at several times the sum at which he bought it. This additional value from the rise of the land, and from the new buildings and improvements upon it, is justly chargeable as property of the lessee, subject to taxation.
It is further objected that the law fixes the valuation of a certain kind of property, 'and does not leave it to be ascertained as in the case of all other property, and therefore is unconstitutional. The long usage here also is properly enough suggested. For many years the law affecting nearly all of the taxable property, real and personal, was liable to an objection similar in principle, though as to lands differing in degree. Lands were divided into first, second, and third rates, and assessed according to rate, and not according to separate value, and chattels of the same kind, however different in value, went upon the tax'list as of the same value. To tax property according to its individual and true value, as a basis for our system, is a principle of rather modern date; and it will not follow that the law is unconstitutional, for the reason alone that the principle is not yet perfectly carried out. The valuation complained of is that which upon a lease at an annual rent of $000 is claimed to be $10,000. To us it appears that the value of the lessor’s property in the case is exactly ascertained; it is just what it would be likely to bring in the market.
This, then, being as we suppose true, the law would not be declared unconstitutional as to the cases before us, whatever might be said of its application to other cases.
Another objection urged is, that this law impairs the obligation of contracts, and is on that account void. The contracts referred to are those between the lessor and lessee. We can not see any such effect produced. They are as binding, and by our courts will be enforced in all their covenants between the parties, since the passage of the law, precisely *as they would have been *502 before. No obligation of either of these contracts, as we think, is violated.
The remaining objections made to the law are considered by us as having force only against its expediency or policy, and not as touching the constitutional power to pass it.
Upon the whole, then, we ai’e all of the opinion that tho law is constitutional, as it operates upon the lessor and first lessee ; and a majority of the court believe it to be constitutional also as to tho subsequent lessees, but on this point one member of the court entertains some doubt.
In examining these cases, though we have come to the conclusion that no evil exists which can be remedied upon constitutional grounds by the action of this court, yet we could not fail to seo that an alleged inequality complained' of as unjust might easily be obviated. It is but to extend to the case one good principle already in the law—that which deducts the debts from the credits, and puts the balance only upon tho tax list. This evil, if found to exist, and justly to claim attention, would doubtless be removed on a proper representation to the body having control over the subject.
Through us, we are constrained to say, under no exercise of our constitutional power, are the appellants entitled to the relief they ask. The decisions made by the auditor will therefore be confirmed.